**SO ORDERED.**

**SIGNED this 10 day of September,2014.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **WILLIAM GEORGE BARBER,** | **13-02357-8-SWH** |
| DEBTOR. | |
| **TERRENCE G. VICKERS and NANCY VICKERS** | |
| Plaintiffs, | **ADVERSARY PROCEEDING NO.** |
| v. | **13-00125-8-SWH** |
| **WILLIAM BARBER, INC., CUSTOM HOME BUILDER and WILLIAM G. BARBER, individually,** | |
| Defendants. | |

**ORDER ALLOWING MOTION TO DISMISS**

Pending before the court is the motion of defendant William Barber, Inc. Custom Home Builder ("WBI") and William G. Barber ("Barber"), the chapter 7 debtor, to dismiss the case of plaintiffs Terrence and Nancy Vickers ("the Vickers") pursuant to Rule 12(b)(6) for failure to state

a claim upon which relief can be granted. A hearing on the motion to dismiss was held in Wilmington, North Carolina, on June 10, 2014. The court took under advisement whether the amended complaint was properly brought under Rule 15 of the Federal Rules of Civil Procedure, and, if so, whether the plaintiff has adequately pleaded grounds for relief to survive defendants' Rule 12(b)(6) motion. For the reasons that follow, the court determines that the amended complaint relates back to the original complaint, with certain exceptions outlined below, but does not survive the defendants' Rule 12(b)(6) motion.

## BACKGROUND

The plaintiffs had entered into a construction contract with the debtor's company, WBI, pursuant to which WBI was to build a home for the Vickers in Holden Beach, North Carolina. A dispute arose regarding the construction and the Vickers initiated a lawsuit in state court against WBI, which resulted in a judgment against WBI for damages arising out of the construction contract.

Barber filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 11, 2013, and James B. Angell was appointed trustee.

On July 29, 2013, the plaintiffs timely filed a complaint to determine the dischargeability of the debt arising out of the state court judgment and the conduct related thereto. Thereafter, on September 30, 2013, defendants filed a motion to dismiss, answer, defenses, and counterclaim. On October 11, 2013, plaintiffs filed a motion to extend time for the filing of responsive pleadings, and an order allowing the motion to extend was issued by this court on October 16, 2013. On November 8, 2013, within the additional time allowed by the court, plaintiffs filed a response to defendants' motion to dismiss and supporting memorandum of law. On the same day, plaintiffs filed

an amended complaint and response to WBI's counterclaim. On December 12, 2013, the defendants filed another motion to dismiss, to which plaintiffs filed a response on January 2, 2014.

The defendants contend that because the construction contract was between the Vickers and WBI, not between the Vickers and Barber, plaintiffs cannot bring this claim against Barber as a creditor in the bankruptcy proceeding. In response, plaintiffs argue that WBI is a mere instrumentality of Barber, who is the sole owner and manager of the corporation, or in the alternative is a mere sham corporation with no independent finances. This, plaintiffs argue, entitles them to pierce the corporate veil to bring these claims against Barber, individually.

## DISCUSSION

The defendants argue two bases for dismissal: 1) that the amended complaint is untimely; and 2) that it fails to state a claim. First, defendants contend that under Rule 15 of the Federal Rules of Civil Procedure, the plaintiffs had to have filed an amended complaint within 21 days of defendants' answer to the original complaint or obtained leave of the defendants or the court. The amended complaint was filed on November 8, 2013 – 39 days after the defendants' answer was filed on September 30, 2013 – and neither the defendants' consent nor authority from the court was obtained to file the amended complaint outside the statutory 21-day limit. Thus, defendants argue that the amended complaint was improperly brought. In response, plaintiffs assert that the amended complaint was properly brought because it relates back to the original complaint.

If the amended complaint is allowed to stand, the court looks to the content of it in determining whether it relates back to the original complaint and, if so, withstands the Rule 12(b)(6) challenge. The plaintiffs argue that, because WBI and Barber should be treated as one entity for the purposes of the bankruptcy proceeding, the money plaintiffs contend defendants owe them should

3

not be a dischargeable debt under 11 U.S.C. §§ 523 and 727 because it is debt that was obtained by false pretenses, false representations, or actual fraud, when monies were accepted for construction progress and materials and then were not used to move toward completion of the project.

**I.      Status of Complaint and Amended Complaint**

The court turns first to the question of whether the amended complaint was timely filed. The plaintiffs did not seek consent of the defendants or leave of the court to file their amended complaint later than 21 days after the defendants' responsive pleading. Because their motion seeking an extension of time pertained only to a responsive pleading and not a new, amended complaint, the court agrees that the amended complaint was improperly filed in violation of Rule 15(a)(B), made applicable to this adversary proceeding by Bankruptcy Rule 7015. However, that does not resolve the matter, and instead leaves the complaint, and the court, in a unique position.

Having determined that the amended complaint was improperly brought pursuant to Rule 15, the court must necessarily determine whether the *original* complaint is subject to dismissal under Rule 12(b)(6). At the hearing on June 10, 2014, it was determined that the original complaint would have been subject to dismissal for not satisfying the detailed pleading standard required by Iqbal and Twombly. However, faced with an inadequate complaint, the court, as a matter of course, would have allowed the plaintiffs to amend the complaint. The court therefore deems the amended complaint to be the complaint that would have been filed had the original complaint been dismissed and additional time for amendment granted by the court.

Because the court will allow the amended complaint to stand, it is now necessary to determine whether the amended complaint relates back to the original complaint pursuant to Rule 15(c). If it does not relate back to the original complaint, it would be deemed a separate – and

4

untimely – complaint, rather than an amendment to the original complaint.[1]  During the June 10 hearing, the question of which aspects of the amended complaint relate back to the original complaint was discussed, and the court determined that ¶ 22(a) would be stricken because it did not relate back to the causes of action alleged in the original complaint.  The other sections in that paragraph, ¶¶ 22(b) - (t), were determined to relate back.

**II.    Application of Rule 12(b)(6) to Amended Complaint**

In reviewing a Rule 12(b)(6) motion, the court must view the pleadings in the light most favorable to the non-moving party and accept all factual allegations as true.  See In re Caremerica, Inc., 409 B.R. 737, 747 (Bankr. E.D.N.C. 2009).  The Supreme Court has held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  That requires more than a plain statement requesting relief; instead, a factual basis for the relief sought must be established.  See Twombly, 550 U.S. at 570.  Moreover,

> [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Iqbal, 556 U.S. at 678 (internal citations omitted) (citing Twombly, 550 U.S. at 556).

---

[1] An objection to the dischargeability of a debt must be brought within 60 days of the § 341 meeting pursuant to Bankruptcy Rules 4007 (which applies to actions under § 523) and 4004 (which applies to actions under § 727).  Thus, if the amended complaint does not relate back to the original complaint, it does not comport with the required limitation on when such an action could be brought under the statute and would be dismissed.

As a threshold matter, and as also explained in open court, it is necessary to determine whether the corporate veil can be pierced, thus exposing the debtor to liability for WBI's debts. The contract at issue is between WBI and the plaintiffs. If the corporate veil is not pierced, there is no basis for the discharge action, the debt of WBI would remain corporate debt for which Barber was not responsible, and the amended complaint must be dismissed against the debtor and WBI as well, the court having no jurisdiction to deal with claims against the corporation.

In the original complaint, in paragraphs 6–10, plaintiffs pled, *inter alia*, that WBI is a corporation incorporated in both North Carolina and South Carolina, that its principal place of business is in Horry County, South Carolina, and that it regularly does business in Brunswick County, North Carolina. Further, they allege that Barber is the sole member/manager/owner of the corporation and that Barber signs contracts on behalf of the corporation. They also allege that the finances of Barber and WBI have been commingled and that Barber's wife handles all of the finances of the corporation and the family. The plaintiffs assert that WBI is a mere instrumentality of the defendant, or in the alternative, is a sham corporation with little to no assets, either of which subjects Barber to liability in his individual capacity. The amended complaint lays out in further detail the transfers made from accounts or construction loan accounts belonging to the Vickers to both WBI and Barber, individually. The plaintiffs allege that while the construction contract allowed use of these funds only to pay for building materials and subcontractors, the accounts were used for other purposes and checks were deposited into Barber's individual account.

"Piercing the corporate veil sets aside that general rule [that a corporation is treated distinct from its shareholders] and allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual that controls and

dominates a corporation." Green v. Freeman, 749 S.E.2d 262, 270 (N.C. 2013). In North Carolina, in order for the court to determine that the corporate veil has been pierced, a party must prove: 1) complete control and domination of not only finances but of all business practices such that the corporation has no separate mind; 2) such control must be used to commit a fraud or other legal wrongdoing; and 3) the control and commission must proximately cause the injury claimed. Best Cartage, Inc. v. Stonewall Packaging, LLC, 727 S.E.2d 291, 300 (N.C. App. 2012). The corporate veil is generally pierced to "prevent fraud or to achieve equity." Mancuso v. Burton Farm Dev. Co., 748 S.E.2d 738, 750 (N.C. App. 2013) (internal quotations omitted) (citing Glenn v. Wagner, 329 S.E.2d 326, 330 (N.C. 1985)). Factors that the court may consider in deciding whether to pierce the corporate veil include: (1) inadequate capitalization; (2) non-compliance with corporate formalities; (3) complete domination and control of the corporation so that it has no independent identity; and (4) excessive fragmentation of a single enterprise into separate corporations. Glenn, 329 S.E.2d at 330–31.

      The court turns to the factual allegations made in the amended complaint with respect to the bases upon which the court could pierce the corporate veil. Of the summary above, the alleged *facts* are that Barber is the sole member/manager/owner of the corporation, that he signed contracts on behalf of the corporation, that his wife handles finances for the corporation, and that checks from the First Bank account were written to Barber. Plaintiffs' allegations that finances have been commingled and that the corporation is a mere instrumentality, however, are plaintiffs' *conclusions*, and are not supported by any facts alleged in the amended complaint. Moreover, the amended complaint alleges that *First Bank issued the checks to Barber individually* from the construction

account; not that Barber wrote those checks. There are no factual allegations of specific conduct, undertaken by Barber, sufficient to support piercing the corporate veil.

Because there is no sufficient factual basis upon which the court could determine that plaintiffs could pierce the corporate veil, the court does not look past this threshold issue to examine the allegations of fraud. The court observes, however, that those allegations also do not assert facts upon which the court could determine that corporate formalities were not observed, such that the corporate veil may be pierced; in short, the factual allegations pertaining to fraud cannot be used to bootstrap the corporate veil issue.

## CONCLUSION

Based on the foregoing, the defendants' motion to dismiss is **ALLOWED.**

**SO ORDERED.**

**END OF DOCUMENT**